Merlin MOUSEL, Appellant,

v.

BITUMINOUS MATERIAL & SUPPLY CO.,
Employer,

American Mutual Liability Insurance Company, Insurance Carrier, Appellees.

No. 53531.

Supreme Court of Iowa.

July 24, 1969.

Geo. F. Davis, of Sifford, Wadden & Davis, Sioux City, for appellant.

Paul W. Deck, Sioux City, for appellees.

GARFIELD, Chief Justice.

Plaintiff, claimant for benefits under the Workmen's Compensation Law, chapters 85, 86, Code 1966, has appealed from an order of the district court affirming the industrial commissioner's dismissal of his claim as not "commenced within two years from the date of the injury causing * * * disability for which compensation is claimed", as required by Code 1966, section 85.26.

The proceedings were commenced by claimant's filing with the commissioner on September 26, 1966 his application for arbitration. The matter was first heard by the deputy commissioner as sole arbitrator, who awarded compensation. On petition for review filed by defendants, employer and its insurance carrier, under section 86.-24, the commissioner reversed the arbitra-

tion decision of his deputy and, as stated, dismissed the claim as not timely filed. Upon claimant's appeal, the district court affirmed the commissioner and this appeal followed.

I. Claimant was employed by defendant Bituminous Material & Supply Co., from April to November 1958 in blacktopping gravel roads. While heating oil used in the operation, he received thermal burns about his face, neck, wrists and arms which eventually resulted in malignancies forming. He told his foreman about the burns but kept on working and saw no physician, nor was he asked to, until sometime between March, 1964 and January, 1965 under the following circumstances.

Claimant stopped working for Bituminous in October or November, 1958 and since then has driven trucks for other employers where he was required to take a physical examination every three years. He testified twice the last such examination before June 20, 1966 was about three years before the arbitration hearing in March, 1967. At one point, however, he said the examination was "something like in January, 1965." The examination was made by Dr. Wiedemeier of Sioux City, who was evidently selected by claimant.

Dr. Wiedemeier advised claimant "to see a skin doctor for these spots" (caused by the burns). Claimant further testified: "I didn't do anything at that time. I just overlooked it. I knew I was having trouble." He did not follow Dr. Wiedemeier's advice until June 20, 1966 when he saw Dr. Leiter, a dermatologist in Sioux City, at the urging of his wife who was getting tired of looking at him.

Dr. Leiter was the only other witness for claimant whose testimony is relevant to this appeal. He said that on June 20 "he found claimant afflicted with numerous malignancies of the skin on the face, eyelids, chest and neck." Asked how he made this diagnosis, the doctor answered "Outer appearance of the lesions was such there was no doubt in my mind what I

was dealing with. However, the diagnosis was confirmed later by pathological examination of the removed tissues." On July 14 claimant underwent surgery by Dr. Leiter for removal of the affected tissue. No diagnosis of the spots on claimant's skin as malignant was made until June 20, 1966.

The worst lesion claimant had was in the center of his forehead. It was ulcerated when he saw Dr. Leiter and had been developing over a long period. Originally it was the size of a match head, grew to the size of a dime and was as large as a quarter when Dr. Wiedemeier examined him in 1964. The scar on his forehead left by the surgery in 1966 was nearly as large as a silver dollar.

Scabs formed on the various burned spots, over the years, claimant would rub them to relieve the itching, they would start "mattering", the scabs would come off, and after a while the spots would reappear, larger than before. In the spring of 1966 the spots would not heal any more but would just stay. From 1958 to 1966 claimant noticed additional spots developing on his face. The one on the forehead never disappeared during that eight-year period. Claimant "figured something was wrong. It wouldn't heal."

On cross-examination claimant admitted the spots caused him difficulty from the fall of 1958 until Dr. Leiter removed them. When Dr. Wiedemeier told claimant to see a skin doctor he knew everything was not all right with the spots and that they kept coming back but, as indicated, he did not know they were malignant until Dr. Leiter so informed him.

Unlike some cases of this general kind, claimant knew all along the spots on his skin were caused by the burns sustained in the course of his employment by Bituminous in 1958.

Claimant assigns two errors on this appeal. That the trial court erred in holding: first, claimant's action was barred by section 85.26 and, second, that it was not nec-

essary for defendants to plead such bar as a special defense.

II. In support of the first of these assignments it is argued that for purposes of notice to the employer and commencement of compensation proceedings the injury causing the disability for which compensation is claimed did not occur until Dr. Leiter's diagnosis revealed to claimant the nature of his disability. The only authority claimant cites is Jacques v. Farmers Lumber & Supply Co., 242 Iowa 548, 47 N.W.2d 236. The commissioner's decision, affirmed by the district court, is largely based on Otis v. Parrott, 233 Iowa 1039, 8 N.W.2d 708. Both the Jacques and Otis opinions were written by Justice Mulroney.

Otis v. Parrott involved a claim for death on July 21, 1939, from tuberculosis which was lighted up, thus causing the death by injury from an accident which occurred January 4, 1939. The widow's petition for arbitration was filed February 5, 1941, more than two years (by one month) after the accident. Claimant contended the two-year limitation period under what is now section 85.26 did not commence to run until March, 1939, when the tuberculosis was lighted up and continued to worsen until death of the workman resulted. The deputy commissioner, the commissioner, the district court and this court rejected the contention, holding the period commenced to run on January 4, 1939, largely because of the wording of the statute.

Although much of the applicable language of 85.26 is quoted at the outset hereof, we set it out more fully here. "No original proceedings for compensation shall be maintained in any case unless * * * commenced within two years from the date of the injury causing such death or disability for which compensation is claimed."

Otis v. Parrott, supra, at page 1043 of 233 Iowa, at page 711 of 8 N.W.2d, contains this: "In all compensation cases there may be two injuries. The first injury, without which there can be no compensation case, is synonymous with accident.

This may be serious or it may be trivial. It may result in immediate disability or death, or it may not result in disability or death for a long time. If this first injury or accident is trivial, then there may be a second injury which occurs when the disability arises. This is the resultant injury. It is caused by the first injury. If the legislature, by using the single word 'injury', allows the courts to speculate on which injury was intended, the courts can, upon reason and authority, arrive at a conclusion that the second or resultant injury was meant. When, however, the legislature specifies that the causal injury will control, then the court is bound by the words of the statute. The language of this statute evidences an intention to set a definite limitation to the period within which proceedings may be commenced without reference to the exigencies which arise from a trivial injury that later causes a compensable injury. The statute relates not only to proceedings for compensation for death, but also to proceedings for compensation for disability. In each instance it is the causal injury that is the starting date for the limitation period within which the proceedings may be maintained."

In connection with the above quotation it would be well to read the six sentences that precede it. The Otis opinion quotes language from Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 1398, 214 N.W. 585, 586, which supports the interpretation of what is now section 85.26 given it in Otis although the statute, then newly enacted, was held in Hinrichs not to be there applicable.

Otis v. Parrott is approved in Bever v. Collins, 242 Iowa 1192, 1195, 49 N.W.2d 877, 879. Incidentally, the amendment by chapter 84, Acts 51st G.A. to what is now 85.26, referred to in Bever v. Collins, is not pertinent to the present case.

Otis v. Parrott (1943) has never been overruled and it is not surprising the industrial commissioner and district court felt it should be followed until this court or

the legislature provides otherwise. Claimant in effect concedes the decision supports the commissioner and district court if it were not for Jacques v. Farmers Lbr. & Supp. Co., supra, 242 Iowa 548, 47 N.W.2d 236.

The Jacques case involves an interpretation of section 85.23, not 85.26 with which we are here concerned. The former statute provides for the time within which notice must be given the employer of the "occurrence of the injury" unless he obtains knowledge thereof. The closing provision of the statute, to which the Jacques opinion calls attention is: "but unless knowledge is obtained or notice given within ninety days after the occurrence of the injury, no compensation shall be allowed."

It will be noticed 85.23 does not say, as 85.26, supra does, "the injury causing such death or disability for which compensation is claimed." The language just quoted from 85.26 was held to be of vital importance in Otis v. Parrott.

In Jacques no accident or special incident occurred but claimant's latent or incipient tuberculosis was lighted up by spray painting truck bodies for his employer. Claimant felt tired, lost weight and eventually quit his job May 30, 1947. On July 24 he was examined by a physician, X-rays were taken July 29 and August 4 and a report given him August 12 he had tuberculosis and should go to a sanitarium for treatment of the disease. Before then claimant had no knowledge he had the disease. We held the starting point of the 90-day period in the notice statute (85.23) was when claimant found out about the disease. This is from the opinion: "So when we construe the phrase 'occurrence of the injury' as the starting point for the 90 day period in the notice statute we have one word 'injury' which has been consistently * * * construed to include disease or the lighting-up of a pre-existing disease when no occasion of time or place can be pointed to when and where the employee received the injury. * * *

"Since the legislature made disease compensable under its term 'injury' then clearly it must have meant the 'occurrence' of this type of 'injury' was when the employee found out about the disease. To hold otherwise would defeat the obvious legislative purpose. The employee could hardly be held under a duty to notify his employer of a disease of which he had no knowledge. It would be unreasonable to conclude that the legislature intended a construction of 'occurrence of the injury'—and we substitute 'occurrence of the disease'—to mean a point of origin before the employee found out about his disease." (pages 552–553 of 242 Iowa, page 239 of 47 N.W.2d)

It is clear Jacques v. Farmers Lbr. & Supp. Co., was not intended to overrule or modify Otis v. Parrott, supra. As stated, both opinions were written by Justice Mulroney. Also, what is said in Otis on another point is referred to in the Jacques opinion. Further, it happens that Justice Mulroney wrote the opinion in Bever v. Collins, supra, 242 Iowa 1192, 1195, 49 N.W.2d 877, 879 (filed some seven months later than Jacques) which, as stated, approves Otis v. Parrott.

We are aware decisions are to be found in other jurisdictions that do not strictly apply such a rule as we adopted in Otis v. Parrott, supra, under all circumstances.

Larson Workmen's Compensation Law, Vol. 2, section 78.41, pages 260, 261, contains this: "Except under statutes expressly dating the limitations period from the 'accident', the time for notice or claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease.

" * * * The usual statute merely dates the period from the time of injury or disability, saying nothing about time of discovery of the nature of the condition. Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition

suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained."

Section 78.52, page 278 of Larson refers back to section 78.41 as showing "most courts with statutes dating the limitations period from the injury have found it possible to interpret the statute as running from the time a reasonable claimant should have known the compensable character of his complaint."

Id., section 78.42(b) refers to the fact "claimant must still prove his case, including work-connection and due care in discovering the nature of his injury."

See also Anno. 11 A.L.R.2d 277, 297 et seq.; 100 C.J.S. Workmen's Compensation § 468(8).

The views expressed in Larson are somewhat similar to those approved in Chrischilles v. Griswold, 260 Iowa 453, 462–463, 150 N.W.2d 94, 100, although it is not a workmen's compensation case:

"The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act.

" * * * We now believe the better rule to be that a cause of action based on negligence does not accrue until plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it * * *."

We are not persuaded on considerations just suggested the commissioner and district court should be reversed under this record. Claimant's brief and argument devotes less than four pages to his first assigned error and, as stated, cites only Jacques v. Farmers Lbr. & Supp. Co., supra, 242 Iowa 548, 47 N.W.2d 236, which we think is not in point, in support of it. His argument is that the two-year statutory period did not commence to run until the trouble from his employment-connected skin spots was diagnosed as malignancies nearly 8 years after the injury occurred.

The conclusion is inescapable that claimant delayed for an unreasonable time consulting a skin specialist or other doctor for a diagnosis of the trouble he knew he was having. Throughout the years from the time he suffered the burns until he finally consulted Dr. Leiter he was fully aware of the sores on his skin which reappeared in larger size and increased number. Claimant's skin trouble had advanced to such a stage that a doctor, apparently selected by him, advised him to see a skin specialist between 27 and 17 months before he took the time to do so and then at the prodding of his wife.

It must be held that until claimant consulted Dr. Leiter he exercised virtually no care to discover the nature of his trouble. Certainly there is no room for a finding he exercised ordinary or reasonable care in this regard. A claimant should not be thus permitted to toll the running of the period of limitations for such an extended time.

■ III. Claimant's remaining complaint that it was error to hold it was not necessary for defendants to plead the bar of section 85.26 as a special defense, is without merit. The argument is based on the last sentence of section 86.14: "A defense other than a general denial of claimant's alleged facts must be pleaded as a special defense."

The rule in this state is that our Workmen's Compensation Act creates a right of action but section 85.26 conditions the institution of proceedings within the prescribed period of two years. The legislature, having the power to create the right, may affix the conditions under which it is to be enforced, and a compliance with these conditions is essential. It is the right to claim benefits under the act that is lost after the lapse of two years. Otis v. Parrott, supra, 233 Iowa 1039, 1045–1046, 8 N.W.2d 708, 712–713; Secrest v. Galloway Co., 239 Iowa 168, 172–176, 30 N.W.2d 793. See also Paveglio v. Firestone Tire & Rubber Co., Iowa, 167 N.W.2d 636, 639.

The view expressed in Tischer v. City of Council Bluffs, 231 Iowa 1134, 1149, 3 N.W. 2d 166, 174, that what is now section 85.26 is also a limitation upon the jurisdiction of the industrial commissioner is disapproved in Secrest v. Galloway Co., supra.

Without receding from what is said in Secrest, cited with approval in Paveglio, as to the question of limitation on jurisdiction of the commissioner, we note the annotation in 78 A.L.R. 1294 cites numerous decisions for this: "The view taken in most of the jurisdictions that operate under workmen's compensation acts is that the limitation of time for filing a claim under the act is jurisdictional, and a condition precedent to the right to maintain an action thereunder."

A similar statement, although with qualifications, appears in 58 Am.Jur., Workmen's Compensation, section 412, page 847.

100 C.J.S. Workmen's Compensation § 468(2), page 364, states the rule substantially as we have done:

"Further, it is held that the requirement as to the time within which a claim for compensation must be made or filed is a matter going to the right to compensation, and being a condition on the right * * * rather than on the remedy * * * it must be strictly complied with."

See also Hilty v. Fairbanks Exploration Co., 9 Cir., Alaska, 82 F.2d 77, 79; Keser v. U. S. S. Lead Refinery, 88 Ind.App. 246, 163 N.E. 621, 622; Sudraski v. State Compensation Comr., 116 W.Va. 441, 181 S.E. 545, 546; Gauthier v. Atchison, T. & S.F.R. Co., 176 Wis. 245, 186 N.W. 619, 620–621.

In view of the nature of the special limitation section 85.26 imposes on the right of recovery it was not necessary for defendants to plead it as a special defense under section 86.14.

Affirmed.

All Justices concur.